## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BRIAN EUGENE JACOBS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action Number |
| **vs.** ) | **4:18-cv-01048-AKK** |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

Brian Eugene Jacobs brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

## I.    PROCEDURAL HISTORY

Jacobs worked as a forklift operator, press operator, and assembly line worker until he stopped working in 2014 at age 46 due to his alleged disability.  R. 420-21, 432, 435.  Thereafter, Jacobs filed applications for disability benefits, asserting initially that he suffered from a disability beginning January 1, 2014, but amending

it later to December 26, 2014, due to a heart condition, blood clots, and a history of a gunshot wound. R. 12, 101-02, 374, 378, 420. After the SSA denied Jacobs' application, Jacobs requested a formal hearing before an ALJ. R. 260-62. The ALJ held two administrative hearings to allow Jacobs to submit additional medical records that he had not submitted before the first hearing. *See* R. 50, 97, 103. Ultimately, the ALJ entered a decision against Jacobs. R. 9-27. The SSA Appeals Council summarily affirmed the ALJ's decision denying disability benefits, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted his administrative remedies, Jacobs filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II.    STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision

as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III.    STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant

ultimately bears the burden of proving that she is disabled, and, "consequently he is responsible for producing evidence in support of his claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

The Act precludes an award of benefits when drug or alcohol abuse is a contributing factor material to the finding of disability. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1525. Thus, if a claimant is found disabled and medical evidence of substance abuse exists, the ALJ must determine whether the substance abuse is a contributing factor to the finding of disability. 20 C.F.R. § 404.1535(a). To do so, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if he stopped using drugs or alcohol and then decide whether any of those remaining limitations would be disabling. *Id.* at § 404.1535(b)(2).

## IV. THE ALJ'S DECISION

In performing the five-step analysis, the ALJ first determined that Jacobs met the insured status requirements of the Act through December 31, 2016, and that he had "not engaged in substantial gainful activity since December 26, 2014, the alleged onset date" of his disability. R. 15. Accordingly, the ALJ proceeded to Step Two of the analysis, finding that Jacobs had the following severe impairments: "opiate dependence and withdrawal, Suboxone withdrawal, polysubstance abuse, depression, and anxiety." R. 15. The ALJ also identified numerous non-severe

impairments including: "tobacco abuse; chronic obstructive pulmonary disease (COPD); upper respiratory infection; hypertension; atypical chest pain; gastroesophageal reflux disease (GERD); a history of aneurysm in 1998; headaches; a history of deep vein thrombosis; ligament sprain; sacral contusion; and hyperlipidemia . . . ." R. 15. Because he found Jacobs' had severe impairments, the ALJ proceeded to Step Three of the analysis and found that none of Jacobs' impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 16

Next, the ALJ determined Jacobs' residual functional capacity ("RFC"), finding that based on all of Jacobs' impairments, including the substance use disorders:

> [Jacobs] has the [RFC] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). [Jacobs] is unable to climb ladders, ropes, or scaffolds, or to perform around hazards. [He] is capable of performing simple one to two-step tasks, and should not have more than occasional contact with supervisors, co-workers, or the public. Contact with the public and co-workers should also be less than thirty minutes at one time. [Jacobs] would do best with a separate work area with no tandem tasks in the work process, and no production quota. [He] will likely miss more than two days per month when using or withdrawing from substance abuse.

R. 18. Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ found at Step Four that Jacobs could not return to any of his past relevant work. R. at 20.

The ALJ then proceeded to Step Five of the disability analysis, where, based on Jacobs' RFC, age, prior work experience, and RFC based on all of Jacobs' impairments, including the substance use disorders, the ALJ concluded that "there are no jobs that exist in significant numbers in the national economy that [Jacobs] can perform . . . ." R. 20. However, because Jacobs cannot be considered disabled if substance abuse is a "contributing factor material to the [ALJ's] determination that [Jacobs] is disabled," 42 U.S.C. § 423(d)(2)(C), the ALJ did not find Jacobs disabled at Step Five. Rather, in accordance with the SSA's regulations, the ALJ returned to Step Two and found that Jacobs would continue to have severe impairments if he stopped the substance use, but that he "would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 21.

Next, the ALJ determined Jacobs' RFC if Jacobs stopped the substance use, stating that:

> If [Jacobs] stopped the substance use, [he] would have the [RFC] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). [Jacobs] is unable to climb ladders, ropes, or scaffolds, or to perform around hazards. [He] is capable of performing simple one to two-step tasks, and should not have more than occasional contact with supervisors, co-workers, or the public. Contact with the public and co-workers should also be less than thirty minutes at one time. [Jacobs] would do best with a separate work area with no tandem tasks in the work process, and no production quota.

R. 22. Based on this RFC, and relying on the VE's testimony, the ALJ found at Step Four that if Jacobs stopped the substance abuse, he still would not be able to perform any past work. R. 26. Proceeding to Step Five, the ALJ found that based on Jacobs' age, education, work experience, RFC, and the VE's testimony, "there would be a significant number of jobs in the national economy" that Jacobs could perform if he stopped the substance use, including parts cleaner, fixture handler, and maskers. R. 26-27. As a result, the ALJ concluded that that "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, [Jacobs] has not been disabled within the meaning of the [] Act at any time from the alleged onset date through the date of [the ALJ's] decision." R. 27.

## V. ANALYSIS

On appeal, Jacobs argues that the ALJ erred by (1) not affording proper weight to the opinions of Dr. Fredric Fiest, Jacobs' treating psychiatrist; (2) failing to state "with at least 'some measure of clarity'" cause for discounting the opinion of Dr. David Wilson, an examining psychologist; (3) refusing to accept an Individual Medical Evaluation ("IME") conducted by Dr. Jarrod Warren, or giving little weight to the IME; and (4) failing to consider all of Jacobs' severe impairments. Doc. 9 at 3. Jacobs also argues that the Appeals Council did not properly review new evidence submitted on appeal and chronologically related to the evidentiary record before the ALJ. *Id.* Finally, Jacobs asserts that, in light of all of the evidence in the record,

substantial evidence does not support the ALJ's decision.  *Id.*  The court addresses each of Jacobs' contentions in turn.

**A.      Whether the ALJ Properly Weighed Opinions of Jacobs' Treating Psychiatrist**

Jacobs first challenges the ALJ's determination to give little weight to opinions of his treating psychiatrist, Dr. Fredric Feist.  Doc. 9 at 40-44.  *See also* R. 25.  The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions.  *Id.*

At issue here are two Mental Health Source Statements Dr. Feist completed on June 15, 2015 and March 23, 2017.  *See* doc. 9 at 40.  *See also* R. 724, 1411.  In the June 2015 Statement, Dr. Feist opined that Jacobs would fail to report for work fifteen days during a thirty-day period due to his psychological symptoms and that Jacobs experienced no side effects from psychiatric medications.  R. 724.  Dr. Feist

also indicated that Jacobs cannot "maintain attention, concentration and/or pace for periods of at least two hour," but can do the following: "understand, remember or carry out very short and simple instructions;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" accept instructions and respond appropriately to criticism from supervisors;" and "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness[.]" R. 724. In the March 2017 Statement, Dr. Feist indicated that Jacobs could not do any of those tasks, and also cannot "adjust to routine and infrequent work changes," or interact with supervisors or co-workers. R. 1411. Dr. Feist opined that Jacobs would be off-task 98% of the time during an 8-hour workday, would fail to report for work thirty days in a thirty-day period due to his psychological symptoms, and that Jacobs' limitation existed in December 26, 2014. R. 1411. Finally, Dr. Feist identified the side effects of Jacobs' medication as "dizziness, drowsiness, strange dreams, muscle weakness, loss of balance [and] coordination, [and] vision change." R. 1411.

The ALJ considered those opinions, but gave them little weight because they "are not consistent with the contemporaneous treatment records from [Dr. Feist] and are not consistent with the objective medical evidence as a whole, as there is no objective support for [his] contention that [Jacobs] would miss 15 to 30 days of work per month." R. 25. The ALJ also noted that the Statements are "checkmark-type

forms [that] were apparently furnished by the claimant's attorneys in anticipation of the disability hearing, and in the absence of cooperation with the reviewing medical sources and the Disability Determination Service." R. 25. While Jacobs suggests that the ALJ erred by not according substantial weight to the opinions and failing to state good cause for discounting the opinions, he does not discuss why the ALJ's reasons for giving Dr. Feist's opinions little weight do not amount to good cause, or specify what the ALJ failed to consider in reaching his conclusion. *See* doc. 9. Thus, "[b]y failing to specify which aspect of the ALJ's decision was incorrect or unsupported by substantial evidence, [Jacobs] has abandoned any challenge to the factual accuracy of the ALJ's conclusion." *Jackson v. Soc. Sec. Admin., Comm'r*, __ F. App'x __, 2019 WL 3407175, at *3 (11th Cir. July 29, 2019) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014)).

Moreover, the record supports the ALJ's decision to give the opinions little weight. To begin, in deciding the weight to give the opinions contained in the Statements completed by Dr. Feist, the ALJ properly considered that the Statements were conclusory forms. The Statements consist primarily of Dr. Feist's circled responses to several yes or no questions regarding what Jacobs can or cannot do without any narrative explanation or reference to any treatment notes. *See* R. 724, 1411. The conclusory nature of the Statements provides good cause for the ALJ to discount them. *See Winschel*, 631 F.3d at 1179; *Reuter v. Soc. Sec. Admin., Comm'r*,

2014 WL 588040, *5 (N.D. Ala. Feb. 14, 2014) (holding that an ALJ had good cause to reject a treating physician's opinions contained in a form consisting of the physician's responses to multiple choice questions) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 11th Cir. 2005)).

Next, the ALJ also properly considered that the opinions contained in the Statements were not consistent with Dr. Feist's own treatment notes. *See* 20 C.F.R. § 404.1527(c)(3), (c)(4); *Phillips*, 357 F.3d at 1241 (explaining that good cause to discount a treating physician's opinion is shown when that "opinion was . . . inconsistent with the doctor's own medical records"). *See also* R. 25. For example, although Dr. Feist opined that Jacobs cannot sustain an ordinary routine without special supervision, cannot interact with supervisors or co-workers, and cannot maintain socially appropriate behavior, R. 724, 1411, Dr. Feist's treatment notes from March 30, 2016 reflect that Jacobs had good to fair judgment, good energy and motivation, and appropriate behavior, R. 939. Additional records from CED Mental Health Center, where Dr. Feist works and saw Jacobs, reflect that in June 2016, Jacobs reported "doing well with depression" and had made good progress in his treatment. R. 938. Additionally, records from August 2016, show that Jacobs was stable, had adequate attention and concentration, good energy and motivation, and appropriate behavior, and reported only some days of depression. R. 936-37. These

entries belie Dr. Feist's assessments that Jacobs is essentially incapable of working due to his psychiatric impairments.

In addition, as noted by the ALJ, Jacobs' objective medical records as a whole did not support the extent of the psychiatric limitations identified by Dr. Feist. *See* R. 25. For example, when Jacobs sought treatment for chest pain on December 26, 2014, he was "cooperative with normal mood, affect, and cognition," and when he sought treatment for headaches, nosebleed, and hypertension in April and May 2015, he exhibited normal memory and an appropriate mood and affect. R. 23, 789, 728, 734. Moreover, when Jacobs sought treatment for chest pain again in February, April, and July 2016, he was found to have normal mood, affect, and cognition, and, in August 2016, when Jacobs sought emergency treatment after accidentally swallowing a nail, he reported that his anxiety was well-controlled on his current medication. R. 23-24, 1248, 1270, 1285, 1297, 1329. Thus, the record contains ample evidence that is contrary to Dr. Feist's June 15, 2015 and March 23, 2017 opinions and provides an adequate basis for the ALJ to find good cause to give those opinions little weight. *See Phillips*, 357 F.3d at 1241.

To summarize, the record shows that the ALJ had good cause to discount Dr. Feist's opinions and that substantial evidence supports his decision. Accordingly, the ALJ did not err in according little weight to Dr. Feist's opinions contained in the Mental Health Source Statements.

**B.**     <u>Whether the ALJ properly Weighed Dr. Wilson's Opinion</u>

Jacobs argues second that the ALJ erred by failing to state "with at least 'some measure of clarity'" the reasons for discounting the opinion of Dr. David Wilson, an examining psychologist. Doc. 9 at 44-47. An ALJ must consider every medical opinion, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), and "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. But, in contrast to a treating physician's opinion, the ALJ owes no deference to the opinion of a one-time examining physician. *See Eyre v. Comm'r of Soc. Sec.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) (citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987)). Nevertheless, an ALJ cannot substitute his judgment for that of an examining physician when determining the weight to assign the physician's opinion. *See Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)).

Dr. Wilson, a licensed psychologist, evaluated Jacobs on January 17, 2017. R. 1238-43. As part of the evaluation, Dr. Wilson reviewed "an extensive summary of [Jacobs'] medical records" that Jacobs' counsel provided him, and Dr. Wilson's written evaluation consists primarily of his written summary of information provided by Jacobs. R. 1238-1243. Based on his review and evaluation, Dr. Wilson opined that Jacobs "has serious medical problems," "is chronically and severely depressed

and [] also has panic attacks," that "[t]hese problems would also cause major problems in any work setting," and that Jacobs "simply does not appear to be capable of working at this time." R. 1242. Finally, Dr. Wilson also completed a Mental Health Source Statement similar to the forms completed by Dr. Feist, and Dr. Wilson indicated in the Statement that Jacobs can "understand, remember or carry out very short and simple instructions," but cannot "maintain attention, concentration and/or pace for periods of at least two hours;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" "adjust to routine and infrequent work changes;" "interact with supervisors;" "interact appropriately with co-workers;" or "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness[.]" R. 1243. Dr. Wilson also opined that Jacobs would be off-task for 50% of an eight-hour workday and would miss twenty days of work in a thirty-day period. R. 1243. The ALJ considered these opinions, but gave them only "some weight." R. 25.

As an initial matter, and as noted by the ALJ, Dr. Wilson's opinion that Jacobs is not capable of working is not a medical opinion, but is instead a legal issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 Fed. Appx. 656, 659 (11th Cir. 2017); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a

claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"); *see also* R. at.  As such, that opinion is not entitled to any weight, *see* 20 C.F.R. § 404.1527(d)(3), and the ALJ did not err by discounting it.

Next, Jacobs suggests that the ALJ wrongfully substituted his judgment for that of Dr. Wilson by discounting Dr. Wilson's opinion without an adequate reason. Doc. 9 at 44-47.  According to the ALJ, he discounted Dr. Wilson's opinion because he found it to be "largely conclusory and [] out of proportion to [Dr. Wilson's] findings."  R. 25.  Indeed, based on a cognition and memory screening, Dr. Wilson found that Jacobs had "adequate mental control and attention," though Jacobs had problems short term and working memory.  R. 1240-41.  In addition, the conclusory nature of Dr. Wilson's opinions is a valid reason for the ALJ to discount the opinions. *See Winschel*, 631 F.3d at 1179; *Reuter*, 2014 WL 588040 at *5.  Moreover, as discussed above and as noted by the ALJ, the record reveals that Jacobs often exhibited a normal mood and affect when seeking medical treatment and reported that his anxiety was well-controlled on medication in August 2016. *See* p. 13, *supra*. *See also* R. 23-24.  In other words, the record supports the ALJ's decision, and the ALJ did not rely only on his own judgment, or hunch, when discounting Dr. Wilson's opinion.  Thus, the ALJ did not err by giving Dr. Wilson's opinion only some weight.

### C. Whether the ALJ Erred by Refusing to Admit Dr. Warren's Medical Evaluation or by Giving Dr. Warren's Opinion Little Weight

Jacobs argues next that the ALJ erred by refusing to accept an IME from Dr. Jarrod Warren, a family medicine physician, hospitalist, and associate hospice director, that Jacobs submitted the day before the second hearing, and, alternatively, by giving Dr. Warren's opinion little weight. Doc. 9 at 47-49. Under the applicable regulations, a claimant "must make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the SSA] about or submit any written evidence [relating to whether or not the claimant is disabled], no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). The regulations further provide that if the claimant misses the deadline, the ALJ "will accept the evidence if he or she has not yet issued a decision and [the claimant] did not inform [the SSA] about or submit the evidence before the deadline because: (1) [The SSA's] action misled [the claimant]; (2) [The claimant] had . . . limitation(s) that prevented [the claimant] from informing [the SSA] about or submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him] from informing [the SSA] about or submitting the evidence earlier." *Id.* at § 404.935(b).[1]

---

[1] Examples of such circumstance include if the claimant was "seriously ill, and [his] illness prevented [him] from contacting [the SSA] . . .; [] [t]here was a death or serious illness in [the claimaint's] family; [] [i]mportant records were destroyed or damaged by fire or other accidental

Turning to the specifics here, one day before the second hearing, Jacobs' counsel submitted a letter to the ALJ summarizing certain medical opinions and attaching an IME completed by Dr. Warren four days before the second hearing. R. 64-74. In the IME, Dr. Warren opines that "Jacobs' significant psychiatric history is his primary issue," Jacobs would be "off-task" 75% of the time in an eight-hour workday, and would miss more than twenty days of work in a thirty-day period due to his physical symptoms. R. 73-74. The ALJ did not accept the IME into evidence because Jacobs submitted it less than five days before the hearing and without stating in the transmittal letter whether Jacobs had good cause for submitting the IME after the deadline. R. 50, 64-69.[2] When questioned at the second hearing about the untimely submission, Jacobs' attorney explained that he offered the IME after the deadline because Jacobs had obtained a number of different medical treatments after the first hearing, and he felt Jacobs needed the IME "after all of his medical treatment to try to clarify his condition." R. 50. That response, however, does not address any of the reasons the regulations provide regarding when the ALJ will accept evidence

cause; or [] [y]ou actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 404.935(b)(3).

[2] Jacobs describes the letter submitted by his counsel as a "show cause letter," and he purportedly quotes from the letter describing why it was necessary to submit the IME after the deadline. *See* doc. 9 at 4, 48. However, the language Jacobs quotes is not contained in the letter submitted to the ALJ. *See* R. 64-69. To the contrary, the only statement regarding the IME in the letter is that "[o]n 5/12/17, Dr. [] Warren performed an [IME] and noted the following limitations . . . ." R. 67.

submitted after the deadline. *See* 20 C.F.R. § 404.935(b).[3] Consequently, the ALJ did not err by finding that Jacobs did not meet the requirements of 20 C.F.R. §§ 404.935(b) and 416.1435(b) and by declining to admit the IME. *See* R. 12-13, 25.

Although the ALJ did not admit the IME, he expressly considered it, but gave it little weight. R. 25. Jacobs does not provide any substantive arguments regarding whether the ALJ erred by giving Dr. Warren's IME little weight, *see* doc. 9, and has therefore waived the issue*, see Jackson*, 2019 WL 3407175 at *2. Additionally, the record supports the ALJ's decision to give the opinion little weight. First, as the ALJ found, Jacobs did not provide Dr. Warren's resume or other evidence of Dr. Warrens' expertise in mental health. *See* R. 25, 64-74. Second, Dr. Warren does not identify what "records" he reviewed as part of his evaluation. R. 70. Next, the conclusory nature of the physical capacities evaluation form provides good cause for the ALJ to give little weight to that portion of the Dr. Warren's opinion. *See Winschel*, 631 F.3d at 1179; *Reuter*, 2014 WL 588040 at *5. In addition, Dr. Warren's opinion that Jacobs would miss more than twenty days of work during a thirty-day period due to Jacob's physical symptoms is not supported by the notes from Dr. Warren's physical exam of Jacobs, which reflect normal findings and no

---

[3] In Jacobs' brief, he asserts that he could not attend the evaluation until four days before the second hearing because he had been in the hospital, doc. 9 at 48, but Jacobs has not properly cited any evidence that he made that argument before the ALJ rendered his decision.

acute distress.  R. 71-72, 74.  Finally, there is ample evidence in the record that contradicts Dr. Warren's opinion.  *See* p. 13, *supra*.  Consequently, the ALJ did not err by discounting the opinion.

### D. Whether the ALJ Erred by Failing to Consider All of Jacobs' Alleged Severe Impairments

Jacobs also argues that the ALJ erred by failing to consider all of his impairments as severe impairments, including his COPD, upper respiratory infection, hypertension, atypical chest pain, gastroesophageal reflux disease, history of aneurysm in 1998, headaches, history of deep vein thrombosis, ligament sprain, sacral contusion, and hyperlipidemia.  Doc. 9 at 49-50.  The ALJ considered those impairments, but found they were not severe because (1) Jacobs' medical records revealed no abnormalities in Jacobs' lung apart from some scarring associated with the gunshot wound, (2) Jacobs' COPD was exacerbated by a viral respiratory infection, (3) Jacobs did not report significant symptoms associated with his high blood pressure, and (4) examinations revealed no indications of cardiovascular abnormalities until Jacobs was diagnosed with mild coronary artery disease in February 2017.  R. 16.  Although the ALJ did not find those impairments severe, he found that Jacobs suffered from the severe impairments of depression and anxiety, not considering Jacobs substance use disorders, and continued to the subsequent steps of the disability analysis.  R. 15, 21.  "Based on [Eleventh Circuit] precedent and the regulations, . . . there is no need for an ALJ to identify every severe

impairment at step two. Accordingly, even assuming that [Jacobs] is correct that [his] additional impairments were 'severe,' the ALJ's recognition of that as a fact, would not, in any way, have changed the step-two analysis . . . ." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). As a result, Jacobs cannot establish that the ALJ committed any reversible error by not considering all of his impairments as severe impairments. *Id.*

Although the ALJ did not need to determine whether all of Jacobs' alleged impairments were severe at step two in the analysis, he must consider all of Jacobs' impairments, regardless of severity, in the remaining steps in the analysis. *Id.* In that regard, Jacobs faults the ALJ for purportedly not considering the following impairments: insomnia, anger outbursts due to bipolar disorder, major depressive disorder with psychotic features, status post overdose with Ambien, seizure disorder, severe low back pain due to degenerative facet disease at L4-5 and L5-SA, right knee pain due to peripheral tear of right medial meniscus, left knee pain status post arthroscopy, history of gunshot wound to chest with pneumothorax, severe migraine headaches, status post cerebral aneurysm surgery, cardiac dysrthymia, deep vein thrombosis, history of TIE, and hypertension. Doc. 9 at 49. But, the ALJ discussed all of Jacobs' impairments in his decision, and he properly considered the combined effect of all of Jacobs' impairments in assessing Jacobs' RFC. *See* R. 15-26. Thus, the ALJ did not err.

### E. Whether the Appeals Council Erred by Failing to Review New Relevant Evidence

For his fifth contention of error, Jacobs argues that the Appeals Council erred by failing to review evidence he submitted on appeal. Doc. 12 at 56-64. *See also* R. 492-537. In general, a claimant may present new evidence in support of his application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). Thus, a claimant may present new evidence to the Appeals Council, and the Council will review the claimant's case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a). But, effective January 17, 2017, "[t]he Appeals Council will only consider additional evidence . . . if [the claimant] show[s] good cause for not informing [the SSA] about or submitting the evidence" no later than five business days before the administrative hearing. *Id.* at § 404.970(b).

As an initial matter, the Appeals Council did not consider an affidavit from Barbara Jacobs, Jacobs' sister-in-law, because the affidavit, which is dated October 24, 2017, was provided after the ALJ rendered his decision and is not chronologically relevant. R. 2, 8. Moreover, a review of the affidavit reveals that it does not necessarily relate to Jacobs' condition at the time of or before the ALJ's

decision. Instead, the affidavit describes Jacobs' present condition. *See* R. 8. As a result, the Appeals Council properly declined to consider the affidavit on the grounds that it is not chronologically relevant. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309-10 (11th Cir. 2018) (finding that records that post-dated the ALJ's decision were not chronologically relevant when "nothing in the[] new medical records indicates that . . . the information in them relates to the period at issue").

Next, Jacobs argues that the Appeals Council erred by not considering the medical records he submitted from Riverview Regional Medical Center, St. Vincent's East, and Dr. Warren. Doc. 9 at 51. In support of that argument, Jacobs cites caselaw that relies on a former version of 20 C.F.R. §§ 404.970(b) and 416.1470(b), and he does not discuss the current version of the regulations that was in effect at the time of the ALJ's decision and the Appeals Council's review.[4] *See* doc. 9 at 51-60. Jacobs simply contends that he had good cause for not submitting the medical records to the ALJ because the records did not exist. *See* doc. 9 at 3, 51. But, the records belie that contention: the records from St. Vincent's East are dated more than one month before the second hearing, the IME from Dr. Warren was dated

---

[4] In contrast to the current versions quoted above, the prior versions of the applicable regulations provides that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence . . . ." 20 C.F.R. §§ 404.970(b) and 416.1470(b) (effective to January 16, 2017) (emphasis added).

four days before the hearing, and the records from Riverview are from May 2017, after the hearing but several months before the ALJ issued his decision. *See* R. 70-74, 105-44. Because Jacobs has not shown cause for not submitting those records to the ALJ, the Appeals Council did not err by not considering them.

Moreover, as the Council found, the medical evidence Jacobs submitted to it "does not  not show a reasonable probability that it would change the outcome of the decision." R. 2. The Riverview Regional Medical Center Records reflect that Jacobs sought treatment for an infection, chest pain and loss of consciousness on May 5 and 31, 2017, and that Jacobs reported "feeling fine" and had normal mood, affect, and behavior upon examination. R. 35-46, 75-85. The records also show that Jacobs' hypertension and chest pain responded to treatment and that Jacobs was discharged from the hospital in improved condition. R. 39. Records from St. Vincent's East reflect that Jacobs sought treatment for suicidal thoughts and depression on December 29, 2014 and remained at the hospital until January 2, 2015, when he was discharged in improved condition. R. 105-07. Jacobs returned to St. Vincent's on four different occasions (June 2-6, 2016; July 11-12, 2016; February 4-7, 2017; and April 6-8, 2017) with chest pain, and, in each of those three instances, the hospital did not identify any significant cardiovascular abnormalities apart from hypertension and discharged him in good or stable condition. R. 109-144. Next, as discussed briefly above, the IME from Dr. Warren is conclusory and contrary to other objective

medical evidence. *See* p. 13, *supra*. Simply put, the records that Jacobs submitted to the Appeals Council do not show that the ALJ's decision is contrary to the weight of the evidence, and the Council properly denied review.

### F.     Whether Substantial Evidence Supports the ALJ's Decision

Finally, Jacobs contends that, in light of the entire record, substantial evidence does not support the ALJ's unfavorable decision. Doc. 9 at 60-61. In particular, Jacobs contends that the VE's testimony was not substantial evidence because the hypothetical question the ALJ posed to the VE "did not accurately state [Jacobs'] pain level or his [RFC]," or "fully state [Jacobs'] impairments and limitations." *Id.* at 60-61. The court is not persuaded. As an initial matter, Jacobs does not specify what evidence regarding his pain level the ALJ failed to consider and has, therefore, waived the argument. *See id.*; *Jackson*, 2019 WL 3407175 at *2.

Next, to determine whether jobs exist in the national economy that Jacobs could perform with his impairments, the ALJ asked the VE to consider a hypothetical individual with Jacobs' age, education, work experience, and RFC. R. 60. Specifically, the ALJ asked the VE to consider an individual who "could perform a range of medium exertion" and "simple one to [two] step tasks," but who "would not climb ladders, ropes, or scaffolds," or "perform around work hazards." R. 60. The ALJ also specified that the individual should have no more than occasional, brief supervision and contact with coworkers or the public, and that the individual

"would do best with a separate work area with no production quota and no tandem task work process." R. 60. This is an accurate statement of Jacobs' RFC as determined by the ALJ if Jacobs stopped the substance abuse. *See* R. 22. Moreover, substantial evidence supports the ALJ's determination of Jacobs' RFC: As to Jacobs' physical impairments, his medical records from the relevant time reveal no significant abnormalities that would be expected to last more than twelve months, aside from stable left lung scarring from a prior gunshot wound, hypertension, which responded to treatment, and mild coronary artery disease. R. 16, 568, 589-90, 603-05, 637-42, 730, 750-51, 755-57, 760-64, 775, 780-82, 797, 808, 827, 839, 848, 865-66, 913, 926-28, 935, 979-84, 1246-48, 1251-52, 1269-72, 1297, 1300, 1328-29, 1377-81, 1398, 1502, 1573, 1628-29. And, no physician recommended any specific restrictions in Jacobs' functioning other than avoiding extreme heat or long periods on the sun, and eating too much salt, and recommending that Jacobs take his medication for hypertension, not exhaust himself, and lie down if he gets fatigued. R. 55, 94-95. As to Jacobs' psychological impairments when he was not suffering from symptoms of opiate withdrawal, the record reveals that Jacobs' depression and anxiety respond to treatment or medication, and that Jacobs consistently exhibited appropriate behavior, affect and mood upon examination. R. 17, 21-22, 728, 734, 789, 936-39, 1248, 1270, 1285, 1297, 1329. Thus, Jacobs has not shown that the ALJ erred in determining his RFC or in posing the hypothetical question to the VE,

and substantial evidence supports the ALJ's finding that a significant number of jobs exist in the national economy that Jacobs could perform if he stopped the substance abuse.

## VI.    CONCLUSION

While it is clear that Jacobs has suffered from multiple impairments for years, and the record may support a contrary finding, the court is not authorized to substitute its judgment for that of the Commissioner.  Instead, so long as the ALJ applied correct legal standards and reached a decision that was both "reasonable and supported by substantial evidence," the court may not second guess the ALJ's findings.  *Martin*, 894 F.2d at 1529.  Based on the foregoing, the court concludes that the ALJ's determination that Jacobs is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is due to be affirmed.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 15th day of August, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE